**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KENYA WILLIAMS and CHARLES GRAHAM** | |
| **v.** | **CIVIL ACTION** |
| **JAMES U. ENWEREJI, ENWEREJI ENTERPRISES, and BERTHA ENWEREJI** | **NO. 17-3906** |

**Baylson, J.** **February 12, 2019**

**MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this case, we must determine whether genuine disputes of material fact preclude summary judgment on behalf of Defendants James U. Enwereji, Enwereji Enterprises, and Bertha Enwereji.[1] Plaintiffs Kenya Williams and Charles Graham, former tenants of Defendants, initiated this suit alleging that Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), as well as state laws proscribing fraud and defamation, through actions related to a lease of a rental unit in Philadelphia, Pennsylvania.

For reasons discussed below, summary judgment for Defendants is GRANTED.

## I. UNDISPUTED FACTS

The following is a fair account of the factual assertions at issue in this case, as taken from both parties' Statements of Fact and not genuinely disputed.

---

[1] Defendants' Motion for Summary Judgment (ECF 20) is filed on behalf of all three defendants, although Defendants argue in their brief that "Enwereji Enterprises" is not a legal entity. To avoid confusion, this Court will limit its use of the term "Defendants" to instances that discuss briefing or arguments submitted on behalf of all three named defendants. The Court will otherwise discuss James and Bertha Enwereji by name, or define them collectively as "the Enwerejis."

James Enwereji owns eleven rental properties in Philadelphia, Pennsylvania, some of which are owned jointly by James and his wife Bertha Enwereji. See Defs.' Statement of Undisputed Findings of Fact (ECF 27, "SUMF") ¶¶ 14–16; Pls.' Resp. to Statement of Undisputed Material Facts (ECF 28, "Resp. to SUMF") ¶¶ 14–16. James began renting out properties in 1989, and he sometimes communicates with tenants under the name "Enwereji Enterprises." SUMF ¶ 7–8. Despite this, he has never filed for articles of incorporation under Pennsylvania law for the name Enwereji Enterprises, has not registered Enwereji Enterprises as a fictitious name, and has not otherwise started any legal corporation for the purpose of renting out properties. Id. ¶¶ 9–10, 24. On documents related to the rental business, James Enwereji uses his personal address, where he lives with his wife and son, as well as his personal, landline phone number. Id. ¶¶ 11–12. Rental income is deposited into James Enwereji's personal bank account, which he holds jointly with his wife. Id. ¶¶ 18–19.

In March of 2013, Williams signed a one-year lease to rent an apartment at 5101 North 11th Street, Philadelphia, Pennsylvania from James Enwereji. Id. ¶ 37; ECF 24, Ex. 17. The lease signed by Williams to rent 5101 N. 11th Street listed only James Enwereji as "landlord"—the names "Bertha Enwereji" and "Enwereji Enterprises" did not appear anywhere on the lease. See ECF 24, Ex. 17. James Enwereji would collect rent payments in person, and Williams only dealt with James in relation to her renting 5101 N. 11th Street. SUMF ¶¶ 50–51. At some point, Williams requested permission from James for Graham, who was on parole from a state conviction, to reside with her at 5101 North 11th Street. SUMF ¶¶ 39–41; Resp. to SUMF ¶ 41. Williams stopped paying rent in July or August of 2013, and received eviction notices from James Enwereji on "Enwereji Enterprises" letterhead dated January 5, 2014, and August 22, 2014.

SUMF ¶¶ 43, 46; ECF 24, Ex. 14. As a result of ensuing court proceedings, Williams was required to vacate 5101 North 11th Street by December of 2014. SUMF ¶ 48.

On October 20, 2016, Williams and Graham entered into another lease agreement with James Ewereji. Id. ¶ 55. This agreement was to rent an apartment at 4903 North 13th Street, Philadelphia, Pennsylvania. Id. The building had three floors, with a separate apartment unit on each floor. Id. ¶ 65. Williams and Graham rented the first floor unit. Id. The lease agreement specified that Williams and Graham would pay $800.00 per month to reside at the apartment for one year. Id. ¶ 57; ECF 20, Ex. A. Graham was still on parole at the time he leased 4903 N. 13th Street. Id. ¶ 68. Although both James and Bertha Enwereji's names were listed on the rental license issued by the City of Philadelphia for 4903 N. 13th Street, see ECF 24, Ex. 4, Bertha did not collect rent, make arrangements for repairs, negotiate leases, sign W-4s of residential leases, or otherwise inspect the rental property. SUMF ¶¶ 26, 28–30; 67, 70, 71, 72. The lease signed by Williams and Graham to rent 4903 N. 13th Street listed only James Enwereji as "landlord"—the names "Bertha Enwereji" and "Enwereji Enterprises" did not appear anywhere on the lease. See ECF 20, Ex. A. In fact, Bertha Enwereji's name did not appear as "lessor" on any of the rental leases, and she did not sign any of them. Id. ¶¶ 31–32.

Williams and Graham complied with their rental obligations at 4903 N. 13th Street for some time, but then stopped paying rent after May 25, 2017. SUMF ¶ 63. At some point, James Enwereji commenced eviction proceedings against Williams and Graham, who then vacated the premises on September 30, 2017. Id. ¶ 64.

## II. DISPUTED FACTS

The following facts are relevant to Plaintiffs' case, but disputed by Defendants.

Plaintiffs brought this civil action as a result of numerous alleged deficiencies in the living conditions at 4903 N. 13th Street. Plaintiffs testified that they were without electricity when they took possession of 4903 N. 13th Street, and then repeatedly lost power as a result of improper foreign wiring and illegal syphoning of electric from adjoining properties. (See ECF 24, "Opp'n," at 5). Plaintiffs further testified that the Enwerejis' attempts to repair the electricity resulted in surges that caused Plaintiffs physical harm. Id. at 6. Plaintiffs also testified that conditions at 4903 N. 13th Street were deficient for the following reasons: a leaking roof caused water damage to Plaintiffs' property; a defective heater caught fire and damaged Plaintiffs' property; the apartment was without functioning smoke detectors and locks on all windows; and Plaintiffs faced constant infestations of cockroaches and mice. Id.

When Plaintiffs would complain about the uninhabitable conditions at 4903 N. 13th Street, they contend that James Enwereji would respond by threatening to "make trouble with [Graham's] parole officer." Id. at 7. According to Plaintiffs, James threatened to contact Graham's parole officer monthly at least between December 2016 and May 2017 to falsely report that Graham was engaging in criminal conduct, unless Plaintiffs ceased complaining about the rental conditions and continued to pay their rent. Id.; Graham Dep. (ECF 24, Ex. 10) at 87:11-23. A visit by an inspector from the City of Philadelphia Department of Licenses and Inspections prompted similar threats from James Enwereji. Id.

Plaintiffs contend that they stopped paying their rent as a result of the uninhabitable conditions at 4903 N. 13th Street. Id. When James commenced eviction proceedings against them, Plaintiffs argue that James sent a letter to the City of Philadelphia accusing Plaintiffs of vandalizing the apartment unit. Id.

## III. PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on August 30, 2017. (ECF 1, "Compl."). The Complaint asserts the following claims:

Count 1: RICO § 1962(c)

Count 2: RICO § 1962(a)

Count 3: RICO § 1962(b)

Count 4: RICO § 1962(d)

Count 5: State Law Fraud

Count 6: State Law Defamation

Before Defendants answered the Complaint, Plaintiffs filed a Motion for Judgment on the Pleadings or, Alternatively, a Motion for Summary Judgment on September 28, 2017. (ECF 4). Defendants then responded with a Cross Motion for Judgment on the Pleadings on October 17, 2017. (ECF 8). Both motions were denied on December 18, 2017. (ECF 14).

Defendants then filed this Motion for Summary Judgment on August 8, 2018. (ECF 20, "Mot." or "Motion"). Plaintiffs responded in opposition on September 20, 2018 (ECF 24, "Opp'n" or "Opposition"), and Defendants replied in support on October 5, 2018 (ECF 25, "Reply"). The Court held oral argument on February 8, 2019, and the Motion is ripe for decision.

## IV. LEGAL STANDARD

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (The nonmoving party "must do more than simply show that there is some metaphysical dispute as to the material facts"). Summary judgment is appropriate if the adverse party fails to rebut the motion by making a factual showing "sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## V. DISCUSSION

### A. RICO § 1962(c) (Count 1)

Section 1962(c) of the RICO Act makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C.

§ 1962(c). To prevail on a claim under section 1962(c), Plaintiffs must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). The Court analyzes the statutory elements in dispute below.

**1. Conduct of an Enterprise**

Plaintiffs allege that James and Bertha Enwereji, together under the name Enwereji Enterprises, constituted an enterprise through which they perpetrated their racketeering activities. As recognized by the Supreme Court and the Third Circuit, "[t]he RICO statute 'describes two categories of associations that come within the purview of the 'enterprise' definition. The first encompasses organizations such as corporations and partnerships, and other 'legal entities.' The second covers any union or group of individuals associated in fact although not a legal entity.'" In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 364 (3d Cir. 2010) (quoting U.S. v. Turkette, 452 U.S. 576, 581-82 (1981)). "[T]o establish liability under § 1962(c) one must allege and prove the existence of two *distinct* entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001) (emphasis added). An association-in-fact enterprise "need not have a hierarchical structure or a 'chain of command.'" Boyle v. United States, 556 U.S. 938, 948 (2009). Rather, "the 'enterprise' element of a § 1962(c) claim can be satisfied by showing a 'structure,' that is, a common 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" In re Ins. Brokerage Antitrust Litig., 618 F.3d at 368 (quoting Boyle, 556 U.S. at 946); see also United States v. Fattah, --- F.3d ----, 2019 WL 209109, at *34 (3d Cir. Jan. 16, 2019).

In this matter, the parties agree that "Enwereji Enterprises" is not a legal entity, in that it is not incorporated under Pennsylvania law or registered under a fictitious name. SUMF ¶¶ 7, 9–10,

24; Resp. to SUMF ¶¶ 7, 9–10, 24.[2] To succeed on their RICO claims, Plaintiffs must therefore present evidence that the Enwerejis were engaged in an association-in-fact enterprise. In support of their position, Plaintiffs argue that Bertha Enwereji testified that "the business of owning and renting properties was both her and her husband's." Opp'n at 22. Indeed, there is no dispute that James and Bertha jointly owned the property at issue and that both of their names appeared on the license allowing the property to be rented. There is also no dispute that the rental income was deposited into a bank account owned jointly by both Enwerejis. The parties further agree that only James Enwereji signed the lease to rent 4903 N. 13th Street, that Plaintiffs solely discussed rental maintenance problems with James, and that Plaintiffs only ever gave rent checks to James. Although Plaintiffs testified that Bertha was sometimes in the car when James would pick up rent checks, Opp'n at 22, or that Bertha sometimes tended to the garden at 4903 N. 13th Street, ECF 24, Ex. 9 at 174:24-175:2, there is no other evidence of Bertha ever visiting the premises.

Still, Plaintiffs claim that they have developed sufficient evidence to show that the Enwerejis were working together as part of an enterprise, under the pseudonym Enwereji Enterprises. Although not clearly identified in Plaintiffs' brief, Bertha Enwereji's deposition testimony contains some statements suggesting that she was part of the business, including: "the business we own is properties," Bertha Enwereji Dep. (ECF 24, Ex. 11) 7:12-13; "I can't remember the exact year we started buying . . . or rent[ing]," id. at 8:12-14; and "All I know is my husband, every year or each year we renew the license of the properties," id. at 10:15-17. Bertha was aware that James previously rented another property to Williams, that Williams left the previous property in bad condition, and that Graham was on parole. Bertha also testified that she advised James not

---

[2] Plaintiffs' counsel expressly conceded this point at oral argument.

to rent the 4903 N. 13th Street property to Plaintiffs because of how the prior lease agreement ended—advice James did not take. Id. at 20:22-21:4.

The Court assumes, without expressly deciding, that the above facts establish a genuine dispute for trial as to whether James and Bertha Enwereji were engaged in an association-in-fact enterprise. However, the Court will proceed to enter summary judgment for Defendants on Count 1 because Plaintiffs have failed to put forth evidence that the presumed enterprise engaged in a pattern of racketeering activity.[3]

### 2. Pattern of Racketeering Activity

Even if Plaintiffs could show the existence of a RICO enterprise, summary judgment is appropriate because, on this record, a reasonable jury could not find that James and Bertha Enwereji engaged in a pattern of racketeering activity. To show "racketeering activity," Plaintiffs must present evidence that James and Bertha engaged in at least two statutorily specified predicate acts. See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 237 (1989); 18 U.S.C. § 1961(1). To establish a pattern of racketeering activity, Plaintiffs must demonstrate that the predicate acts are "related, *and* that they amount to or pose a threat of continued criminal activity." H.J. Inc., 492 U.S. at 239 (emphasis in original). There also must be sufficient evidence that James and Bertha "participated in the conduct of the enterprise's affairs . . . through—that is, by means of, by consequence of, by reason of, by agency of, or by the instrumentality of—a pattern of

[3] Defendants also argue that the RICO statute requires Plaintiffs to prove that the enterprise's conduct affected interstate commerce. See Mot. at 22. Because the Court finds that Plaintiffs have failed to proffer evidence sufficient to show a pattern of racketeering activity, we need not decide whether the Enwerejis' conduct affected interstate commerce. The Supreme Court has recognized in another criminal context that "buildings used in interstate commerce" include rented residential properties. Russell v. United States, 471 U.S. 858, 862 (1985)); see also United States v. Forsythe, 711 F. App'x 674, 676 (3d Cir. 2017), cert. denied, 138 S.Ct. 1030 (2018). However, this Court expresses doubt that the business of renting two properties—both in the city of Philadelphia—to Plaintiffs—residents of Philadelphia—is the type of interstate activity contemplated by RICO.

racketeering activity." In re Insurance Brokerage Antitrust Litig., 618 F.3d at 372 (internal citations and quotation marks omitted).

The Complaint alleges that the Enwerejis "committed at least ten predicate acts," but identifies only three with specificity: (1) extortion, in violation of 18 Pa. C.S. § 3923;[4] (2) tampering with a witness or victim, in violation of 18 U.S.C. § 1512; and (3) retaliating against a witness or victim, in violation of 18 U.S.C. § 1513.[5] Compl. ¶¶ 14–15, 62–63, 70, 76, 81. Plaintiffs reiterate those predicate acts in their Opposition to this Motion. See Opp'n at 8.[6]

---

4 The Complaint alleges extortion in violation of 42 Pa. C.S. § 3923. See Compl. ¶ 15. Because there is no statute with that citation, and because the Pennsylvania crime entitled "theft by extortion" is found at 18 Pa. C.S. § 3923, the Court will assume Plaintiffs intended to allege the predicate act of extortion under the latter statutory citation. Under Pennsylvania's crime of theft by extortion, "[a] person is guilty of theft if he intentionally obtains or withholds property of another by threatening to: (1) commit another criminal offense; (2) accuse anyone of a criminal offense; (3) expose any secret tending to subject any person to hatred, contempt or ridicule; (4) take or withhold action as an official, or cause an official to take or withhold action; (5) bring about or continue a strike, boycott or other collective unofficial action, if the property is not demanded or received for the benefit of the group in whose interest the actor purports to act; (6) testify or provide information or withhold testimony or information with respect to the legal claim or defense of another; or (7) inflict any other harm which would not benefit the actor." 18 Pa. C.S. § 3923(a).

5 As an initial matter, the Court is not convinced that Plaintiffs' RICO claims can stand on the predicate acts of tampering with or retaliating against a witness, as proscribed by 18 U.S.C. §§ 1512–1513. Section 1512 applies to tampering with witnesses in federal proceedings. See Jaye v. Oak Knoll Village Condominium Owners Assoc., Inc., --- F. App'x ---, 2018 WL 4360901, *2 (3d Cir. Sept. 13, 2018) (citing United States v. Petruk, 781 F.3d 438, 445 (8th Cir. 2015); Deck v. Engineered Laminites, 349 F.3d 1253, 1257 (10th Cir. 2003)). The Court sees no reason, based on the language of the statutes, that Section 1513 should be read any differently. To the extent the record evidences witness tampering or retaliation, it was related to James Enwereji's attempts to dissuade Plaintiffs from reporting him to local licensing and inspection authorities. As these authorities are not federal proceedings, there is no basis in the record to support a finding that the Enwerejis violated Sections 1512 and 1513.

6 The Court notes that both Plaintiffs and Defendants spend some portions of their briefs discussing conduct that falls outside of the predicate acts alleged in the Complaint. Defendants' Motion addresses allegations that Defendants: (1) illegally syphoned electricity from adjoining units; (2) failed to provide utilities to the Plaintiffs at times; (3) allowed a leak on the porch of the leasehold to continue; and (4) provided inadequate heating sources for the apartment unit. Mot. at 26 (citing generally to the Complaint). Plaintiffs' Opposition addresses the predicate acts alleged

To the extent the record evidences threats, there is insufficient evidence of witness tampering, retaliation, or theft by extortion. Plaintiffs rely on James Enwereji's threats to report Graham to his parole officer if Graham did not refrain from complaining about, or reporting to local authorities, the living conditions at 4903 N. 13th Street. They contend in their Opposition that such threats were made in December 2016, January 2017, February 2017, March 2017, April 2017, May 2017, and June 2017. See Opp'n at 7. Graham testified at his deposition that James threatened him "every month" after Plaintiffs moved into the apartment. See Graham Dep. 87:11-23. Graham also testified that he learned from his parole officer—which is testimony based on hearsay—that James actually did call the officer once and told the officer that Graham had threatened to kill him. Id. at 64:20-25.

This testimony, even if admissible and credited by a factfinder, is insufficient to establish a pattern of racketeering activity. To show a pattern of racketeering activity, Plaintiffs must present evidence that the predicate acts are related and continuous. See H.J. Inc., 492 U.S. at 239; Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412 (3d Cir. 1991). "Predicate acts are sufficiently related when they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Hindes v. Castle, 937 F.2d 868, 872 (3d Cir. 1991) (internal citation and quotation marks omitted). The continuity requirement is "centrally a temporal concept," and may

in the Complaint, see Opp'n at 8, but also argues that the record shows Defendants: (1) maintained an uninhabitable property which was advertised as being habitable; (2) profited from not maintaining habitable properties; and (3) collected rent from persons despite not complying with health and safety codes. Opp'n at 5. Plaintiffs summarize the Enwerejis' actions as having "the same stated goal of allowing Defendants to continue collecting rent and payments for short-term rental properties which were not maintained safely and according to the applicable housing codes." Id. The Court need not address these arguments because they are not RICO predicates as required by statute or applicable precedent.

be either closed- or open-ended. H.J. Inc., 492 U.S. at 241–42. Open-ended continuity may be established "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" Id. at 243. Closed-ended continuity is established by showing a series of related predicates extending over a substantial period of time. Id. at 242.

Here, Plaintiffs have failed to show sufficient evidence to establish either open- or closed-ended continuity. The facts in this record specifically pertain to the period of time covering Plaintiffs' lease of 4903 N. 13th Street. The lease term was for one year, and Plaintiffs resided at the property for a little over eleven months. Plaintiffs argue that the racketeering activity took place between December 2016 and June 2017. There is nothing in the record to suggest that the predicate acts exceeded that time period. Nor do Plaintiffs put forth any evidence that the predicate acts are emblematic of how James and Bertha Enwereji conduct their ongoing business. Although the parties agree that Plaintiffs previously rented another property from James, the record is devoid of any evidence that James engaged in witness tampering, retaliation, or theft by extortion during the course of that lease. Plaintiffs also argue that an upstairs neighbor at 4903 N. 13th Street, who moved out just a month or two after Plaintiffs moved in, faced electrical problems. See Williams Dep. (ECF 24, Ex. 9) at 57:3-58:2. This argument is unrelated to the predicate acts alleged in this case and cannot support a finding that James Enwereji regularly engages in threatening, retaliatory, and extortionate behavior as a matter of course. Plaintiffs have thus failed to present any evidence that the racketeering activity they rely on was part of an open-ended pattern.

Plaintiffs have also failed to show a closed-ended pattern of continuity. The Third Circuit has repeatedly held that "conduct lasting no more than twelve months [does] not meet the standard for closed-ended continuity." Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir. 1995) (collecting cases).

Even if Plaintiffs had presented evidence that James Enwereji engaged in the predicate acts over the entire course of the lease, it would not be enough to sustain a showing of a closed-ended pattern of racketeering activity.

For all of these reasons, there is insufficient evidence in the record to show that James and Bertha Enwereji engaged in a pattern of racketeering activity. Judgment will therefore be entered for Defendants on Count 1.[7]

**B. RICO § 1962(a), (b), and (d) (Counts 2, 3, and 4)**

Defendants' Motion seeks summary judgment on all four RICO counts by arguing that there is no enterprise, the rental activity does not affect interstate commerce, the conduct did not take place over a significant enough period of time to constitute a pattern of racketeering activity, and Plaintiffs' alleged damages are unrelated to the racketeering activity. The parties did not brief arguments specific to subsections (a), (b), and (d) of the RICO statute. The Court nonetheless finds that summary judgment is appropriate on Counts 2, 3, and 4. Plaintiffs' failure to proffer sufficient evidence of a pattern of racketeering activity is enough to warrant judgment for Defendants on all four of the RICO claims. Even if that were not the case, the Court is aware of no evidence in the record to support claims under subsections (a), (b), or (d).

Unlike subsection (c), discussed at length above, subsection (a) of the RICO statute makes it unlawful for a person to receive income from a pattern of racketeering activity and then invest that income in any enterprise that engages in activities affecting interstate or foreign commerce.

---

[7] Defendants also argued that Plaintiffs failed to show that their damages were proximately caused by the alleged racketeering activity. Because the Court finds that Plaintiffs have not satisfied their burden of showing racketeering activity, we need not address Defendants' causation argument.

See 18 U.S.C. § 1962(a). Plaintiffs have not established that there is any evidence in the record to support such a claim.[8]

Subsection (b) specifies that "[it] shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). Thus, subsection (b) prohibits the acquisition or control of an interest in a RICO enterprise. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1190 (3d Cir. 1993). Again, the Court is aware of no evidence in the record to support a finding that James and Bertha Enwereji took control of an enterprise as a result of racketeering.

Subsection (d) makes it unlawful "for any person to *conspire* to violate any of the provisions of subsection (a), (b), or (c)" of Section 1962. 18 U.S.C. § 1962(d) (emphasis added). Plaintiffs have put forth no evidence, either through briefing or at oral argument, to show the Enwerejis conspired to violate the RICO statute.

Summary judgment will therefore be entered for Defendants on Counts 2, 3, and 4.

### C. State Law Claims for Fraud and Defamation (Counts 5 and 6)

Having entered judgment for Defendants on Plaintiffs' four RICO claims, the only remaining claims fall under Pennsylvania state law. In this matter, federal jurisdiction was premised solely on the existence of a federal question, pursuant to 28 U.S.C. § 1331. State courts are the preferred arbiters of state law claims, especially when federal claims are dismissed before trial. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions

[8] When prompted by the Court at oral argument, Plaintiffs' counsel represented for the first time that the record contained evidence that the Enwerejis invested income in an enterprise and acquired or maintained an interest in or control of an enterprise, as required by 18 U.S.C. § 1962(a) and (b). Counsel failed to explain where such information could be found in the record, and the Court is otherwise not aware of such facts in the materials submitted with the parties' briefing.

of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Upon dismissing all claims within a federal court's original jurisdiction, the Court has discretion to decide whether to continue to exercise supplemental jurisdiction over remaining state court claims. See 28 U.S.C. § 1367(c)(2).

To resolve Plaintiffs' remaining state law claims, the Court would need to apply and interpret Pennsylvania state law. Considerations of comity, fairness, and judicial economy strongly favor having Pennsylvania courts, rather than federal courts, resolve these claims. Such important considerations are not outweighed by any personal convenience to the parties in continuing to litigate in this federal forum. Accordingly, this Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and dismisses these claims without prejudice. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF 20) is GRANTED.

An appropriate Order follows.

O:\CIVIL 17\17-3906 Williams v Enwereji\17cv3906 Memo re Mot for SJ